IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JACKIE TANNREUTHER** <br> 6023 Winnetka Drive <br> Cincinnati, OH 45236 <br><br>     **Plaintiff, Individually, and on behalf of other members of the general public similarly situated**, <br><br>   v <br><br> **CG MEDICAL ASSOCIATES, INC.** <br> **d/b/a CAREFIRST URGENT CARE** <br><br> **and** <br><br> **CHETAN GUPTA** <br> 7300 Beechmont Avenue <br> Cincinnati, OH 45230 <br><br> **Defendants.** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **CASE NO. 1:22-cv-391** <br><br> **JUDGE** <br><br><br><br><br><br><br><br><br><br><br><br><br><br> **Jury Demand Endorsed Herein** |

**PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAILR LABOR STANDARDS ACT AND OHIO LAW**

NOW COMES Plaintiff Jackie Tannreuther (hereinafter, "Named Plaintiff") individually and on behalf of other members of the general public similarly situated, for her complaint against Defendant CG Medical Associates, Inc., d/b/a CareFirst Urgent Care and Defendant Chetan Gupta (collectively "Defendants"), for their failure to pay employees wages seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.03 ("the Ohio Wage Act"); and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred

to collectively as "the Ohio Acts"). The claims under the FLSA are brought as a collective action pursuant to 29 U.S.C. § 216(b); and the claims pursuant to O.R.C. § 4111.03 and the OPPA are brought as a class action pursuant to Rule 23.

## JURISDICTION AND VENUE

1. This action is brought pursuant to Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., Ohio Minimum Fair Wage Standards Act, O.R.C. 4111 ("MFWSA" or "Chapter 4111"), Ohio Prompt Pay Act, O.R.C. § 4113.15("OPPA") (MFWSA and OPPA referred to collectively as the "Ohio Acts"), Ohio Constitution, Art. II, §34a (the "Ohio Constitution") (collectively Chapter 4111, OPPA, and the Ohio Constitution will be referred to collectively as the "Ohio Wage Laws"), and 28 U.S.C. §1331.

2. This Court has federal question jurisdiction over this action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

3. This Court has jurisdiction over Named Plaintiff's State Law Claims pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Named Plaintiff entered into an employment relationship with Defendants in the Southern District of Ohio and performed her job duties there and Defendants is doing and has done substantial business in the Southern District of Ohio.

## THE PARTIES

### I. Named Plaintiff

5. Named Plaintiff Jackie Tannreuther is an individual, a United States citizen, and a resident of the state of Ohio.

6. Named Plaintiff is a former employee, as defined by 29 U.S.C. § 203(e) and Chapter 4111, of Defendants. Named Plaintiff was employed by Defendants since July 2020.

7. Named Plaintiff has evidenced her consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. § 216(b). (See Exhibit A).

8. At all times relevant herein, Named Plaintiff was an "employee" of Defendants as that term is defined under the FLSA, O.R.C. Chapter 4111 et seq., and OPPA.

## II. Defendants

9. Defendant Chetan Gupta is an individual, a United States citizen, and a resident of Ohio.

10. Defendant Chetan Gupta was, at all times relevant, the owner of Defendant CG Medical Associates, Inc., d/b/a CareFirst Urgent Care.

11. At all times relevant to this action, Defendant Chetan Gupta exercised significant operational control over issues such as firing, hiring, rates of pay, and hours worked for employees of Defendant CG Medical Associates, Inc., d/b/a CareFirst Urgent Care.

12. Defendant CG Medical Associates d/b/a CareFirst Urgent Care is an Ohio corporation doing business in the Southern District of Ohio.

13. Upon information and belief, Defendants were engaged in interstate commerce and Defendants had an annual gross volume sale and/or business in an amount of not less than $500,000.00.

14. Upon information and belief, Defendants, at all times relevant hereto, were fully aware of the fact that they were legally required to comply with the wage and hour laws of the United States and of the State of Ohio.

15. During relevant times, Defendants had knowledge of and acted willfully in regard to their conduct described herein.

16. At all times relevant herein, Defendant CG Medical Associates, Inc., d/b/a CareFirst Urgent Care., was a covered "employer" as that term is defined under FLSA, and O.R.C. Chapter 4111 *et seq*.

## FACTUAL BACKGROUND

17. Named Plaintiff began working for Defendants as a medical receptionist in July 2020. From that time through August 24, 2021, Defendants paid Named Plaintiff a set hourly amount for each hour she worked.

18. On or about August 25, 2021, Defendants began paying Named Plaintiff a set bi-weekly amount of $2,115.38 when Defendants promoted her to a Front Desk Lead position.

19. Approximately a week later, on or about September 1, 2021, Defendants increased Named Plaintiff's pay significantly to a set bi-weekly amount of $2,884.62.

20. Defendants significantly increased Named Plaintiff's pay at that time because, in addition to performing her previous duties that she performed during her 5 twelve-hour shifts per week, she became responsible for scheduling all personnel at Defendants' 25+ facilities.

21. Named Plaintiff's new scheduling responsibilities greatly increased her hours worked each week. Given that Defendants' facilities are open seven days a week, Named Plaintiff worked significant hours every day of the week dealing with, among other things, situations in which personnel called off, requested adjustments to their work schedules, and more. Additionally, she constantly communicated with management about issues of coverage and adjustments to the schedules. She also spent significant time writing the schedules for the 25+ Defendants' facilities. She conservatively worked an average of 85 hours per week during that time, which combined her 60 weekly scheduled hours at the facility and the hours she worked while at home, at night, and on the weekends.

22. Defendants increased Named Plaintiff's bi-weekly pay to $3,269.23 on or about December 16, 2021. Defendants increased her pay at that time because so many of Defendants' employees were quitting during that period.

23. Defendants continued to pay Named Plaintiff that amount until they reduced her bi-weekly amount to $2,307.69 on February 24, 2022.

24. In late January 2022, Defendants took away Named Plaintiff's scheduling responsibilities and had her performing billing operations. She began working from 8:00 a.m., through 4:00 p.m., Monday through Friday. Approximately a month later, Defendants changed her responsibilities again by requiring her to work four twelve-hour shifts per week.

25. Defendants reduced Named Plaintiff's bi-weekly pay if she ever had to miss work. For instance, Named Plaintiff left work on October 25, 2021, at 6:00 p.m. for a migraine headache she experienced during her shift. Named Plaintiff was scheduled to work until 8:00 p.m. that day. She notified Jordyn Mandle (Chief Operating Officer) that she left two hours early that day due to her migraine headache. Defendants reduced Plaintiff's bi-weekly pay by $83.20 from her next bi-weekly check due to the two hours she missed for her migraine headache on October 25th.

26. Defendants reduced Named Plaintiff's pay, again, in February 2022 because Defendants claim she did not work her entire shift. Katie Coons sent her an email stating that, "[p]er the explanation I got from management," Named Plaintiff's compensation for the first week in the two-week pay period was reduced by $964.42 because she only worked 29.5 of the 50 hours she was supposed to work in order to receive her full compensation.

27. Defendants informed Named Plaintiff that it is Defendants' policy to reduce Named Plaintiff's bi-weekly pay by a prorated amount if Named Plaintiff missed part of her scheduled shift.

Plaintiff asked Ms. Mandle if Defendants would reduce her bi-weekly pay if she had to leave her scheduled shift 4 hours early to take a family member to the hospital. Ms. Mandle indicated that Defendants would reduce her pay by 4 hours. Since Named Plaintiff was scheduled to work 4 twelve-hour shifts at the time of the inquiry and made a bi-weekly amount of $2,307.69, Ms. Mandle indicated that Defendants would reduce her pay by $96.16 ((($2,307.69/2)/48) x 4) if she left 4 hours early on a given day.

28. Defendants' treatment and communications to Named Plaintiff is consistent with their practice of reducing salaried employees' pay for partial absences. For instance, Defendants reduced Ashley Hutton's salary by a portion of her full-day shift pay because she did not work an entire shift. Likewise, Defendants reduced Sky Waldbillig's salary because she had to leave early to care for her child. Defendants also reduced the salaries of Marcy Gomez and Marjorie l/n/u because they arrived late to work. Defendants reduced the salaries of more than 20 providers because Defendants closed their clinics prior to normal business hours in early February 2022 due to the inclement weather.

29. Named Plaintiff consistently complained about Defendants' deductions from her pay. She responded to Ms. Mandle's November 6th email by expressing her disapproval of Defendants reducing her pay for leaving two hours early due to her migraine headache. In that response, she acknowledged that she "left at 6 pm from Middletown" and, "[i]f this the case [for the deduction], then I need to get paid all the times I work on my off days which is almost all."

30. Named Plaintiff also complained about Defendants deducting her pay by $928.00 on February 11, 2022. She sent an email to Dr. Gupta, Ms. Mandle, and Ms. Coons indicating that the deduction was "[c]ompletely unacceptable and [c]ompletely illegal." Named Plaintiff

6

concluded the email by saying, "I need answers asap and need this fixed asap or I have no choice but to file a claim with the state of Ohio."

31. Defendants' owner, Dr. Gupta, responded to Named Plaintiff's email by calling her on the phone. During that call, Dr. Gupta screamed at her, saying he could not believe she threatened to contact the State of Ohio over a thousand dollars, and told her she was "fucking fired."

32. About an hour later, Dr. Gupta called Named Plaintiff back apologizing and saying he wanted for her to continue to work. Dr. Gupta indicated, however, that he was upset that she copied Ms. Mandle and Ms. Coons on the email. Dr. Gupta requested that Named Plaintiff send another email copying Ms. Coons and Ms. Mandle which apologized to him. When Named Plaintiff did not send the email right away, Dr. Gupta sent her a text message asking, "Email?" Named Plaintiff followed up on Dr. Gupta's text message to Ms. Mandle and Ms. Coons saying that she would only speak to Dr. Gupta directly in the future about pay issues.

33. Four days later, on or about February 15, 2022, Dr. Gupta sent a text message to Named Plaintiff demanding that she send him an email of what she was able to get done that day and that she sends him that email daily. Named Plaintiff viewed that request as punitive because, to her knowledge, Dr. Gupta did not request that from any other employee of Defendants.

34. A few weeks later, Defendants terminated Named Plaintiff's employment for no legitimate reason. On March 11, 2022, Ms. Mandle informed Named Plaintiff that Defendants were terminating her employment by claiming that she did not appear happy in her front desk position and Defendants had no other opportunities for her.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

### I. Overtime Collective Action

35. The Named Plaintiff brings her FLSA overtime minimum wage claims pursuant to 29 U.S.C. § 216(b) as a representative action on behalf of herself and all other similarly situated employees of the opt-in class. The FLSA minimum wage collective consists of the following:

> All current and former employees of Defendants who were paid a salary and worked over 40 hours in any workweek during the three (3) years preceding the filing of this Complaint and continuing through the final disposition ("FLSA Overtime Collective" or "FLSA Overtime Collective Members")

36. This FLSA claim is brought as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as claims for unpaid wages or withheld compensation violation of the FLSA, liquidated damages and attorneys' fees and costs under the FLSA. In addition to Named Plaintiff, numerous Similarly Situated Persons ("SSPs") have been denied proper compensation due to Defendants' payroll policies and practices. Named Plaintiff is representative of those other employees and is acting on behalf of their interests as well as her own in bringing this action.

37. These SSPs are known to Defendants and readily identifiable through Defendants' payroll records. These individuals may be readily notified of this action, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for minimum wage compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

### II. Rule 23 Class Allegations

38. The Named Plaintiff brings her Ohio Wage Act claims pursuant to Fed. R. Civ. P. 23 as a class action on behalf of herself and all other members of the following class:

> All current and former employees of Defendants who were paid salary and who worked over 40 hours during any workweek during the two (2) years preceding the filing of this Complaint and continuing through the final

8

        disposition ("Ohio Rule 23 Overtime Class" or "Ohio Rule 23 Overtime Class Members").

39. The Ohio Rule 23 Overtime Class, as defined above, is so numerous that joinder of all members is impracticable.

40. Named Plaintiff is a member of the Ohio Rule 23 Overtime Class and her claims for unpaid overtime are typical of other members of the Ohio Rule 23 Class.

41. The Named Plaintiff will fairly and adequately represent the Ohio Rule 23 Class and the interests of all members of the Ohio Rule 23 Overtime Class.

42. The Named Plaintiff has no interests that are antagonistic to or in conflict with those interests of the Ohio Rule 23 Class that have been undertaken to represent.

43. The Named Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the entire Ohio Rule 23 Class.

44. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants with respect to their non-exempt employees.

45. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) as Defendants acted or refused to act on grounds generally applicable to the Ohio Rule 23 Class, making appropriate declaratory and injunctive relief with respect to the Named Plaintiff and the Ohio Rule 23 Overtime Class as a whole.

46. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) as the questions of law and fact common to the Ohio Rule 23 Overtime Class predominate over questions affecting individual members of the Ohio Rule 23 Overtime Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

47. Questions of law and fact that are common to the Ohio Rule 23 Overtime Class include, but are not limited to: (a) whether Defendants violated the Ohio Wage Act by failing to pay the Ohio Rule 23 Class certain overtime wages for hours worked in excess of forty hours per week; (b) whether Defendants' violations of the Ohio Wage Act were knowing and willful; (c) what amount of unpaid and/or withheld compensation, including overtime compensation, is due to the Named Plaintiff and other members of the Ohio Rule 23 Class on account of Defendants' violations of the Ohio Wage Act; and (g) what amount of prejudgment interest is due to Ohio Rule 23 Class members on the overtime or other compensation which was withheld or not paid to them.

48. A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiffs' claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court. The Named Plaintiff and counsel are not aware of any pending Ohio litigation on behalf of the Ohio Rule 23 Class, as defined herein, or on behalf of any individual alleging a similar claim. Because the damages sustained by individual members are modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against the Defendants to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### RETALIATION - FLSA

49. All of the preceding paragraphs are realleged as if fully rewritten herein.

50. Named Plaintiff engaged in protected conduct when she raised concerns about Defendants' deduction of her salary based upon the hours she worked, thereby resulting in her not receiving her full overtime due.

51. Named Plaintiff suffered an adverse employment action when Defendants terminated her for a meritless reason weeks after Named Plaintiff informed Defendants that Defendants' deductions were illegal and she would report Defendants to the State of Ohio.

52. There is a causal connection between Named Plaintiff's complaints of unpaid overtime and her termination, given, among other reasons, the close temporal proximity (i.e., a few weeks) between her most recent complaint and termination.

53. Defendants have failed to provide any legitimate, non-retaliatory reason for Named Plaintiff's termination.

54. As a result, Named Plaintiff has been damaged.

## SECOND CAUSE OF ACTION:
## RETALIATION – O.R.C. 4111 *et seq*.

55. All of the preceding paragraphs are realleged as if fully rewritten herein.

56. Named Plaintiff engaged in protected conduct when she raised concerns about Defendants' deduction of her salary based upon the hours she worked, thereby resulting in her not receiving her full overtime due.

57. Named Plaintiff suffered an adverse employment action when Defendants terminated her for a meritless reason weeks after Named Plaintiff informed Defendants that Defendants' deductions were illegal and she would report Defendants to the State of Ohio.

58. There is a causal connection between Named Plaintiff's complaints of unpaid overtime and her termination, given, among other reasons, the close temporal proximity (i.e., a few weeks) between her most recent complaint and termination.

59. Defendants have failed to provide any legitimate, non-retaliatory reason for Named Plaintiff's termination.

60. As a result, Named Plaintiff has been damaged.

## THIRD CAUSE OF ACTION:
## FLSA – COLLECTIVE ACTION FOR UNPAID OVERTIME

61. All of the preceding paragraphs are realleged as if fully rewritten herein.

62. This claim is brought as part of a collective action by the Named Plaintiff on behalf of herself and the FLSA Overtime Collective.

63. The FLSA requires that non-exempt employees receive overtime compensation for hours worked in excess of forty (40) per week.  29 U.S.C. § 207(a)(1).

64. The FLSA provides that employees are non-exempt if they are not paid on a "salary basis," as that term is defined under the FLSA.

65. During the three years preceding the filing of this Complaint, Defendants employed the Named Plaintiff and the FLSA Overtime Collective Members.

66. The Named Plaintiff and the FLSA Overtime Collective Members worked in excess of 40 hours in workweeks.

67. The Named Plaintiff and the FLSA Overtime Collective Members were not fully and properly paid all overtime wages earned in the last three years because, despite being paid a salary amount, they were not paid on a salary-basis as defined under the FLSA.

68. Defendants violated the FLSA with respect to Named Plaintiff and the FLSA Overtime Collective by, inter alia, failing to compensate them at time-and-one-half times their regular rates of pay for all hours worked over forty (40) hours in a workweek as described herein.

69. The Named Plaintiff and the FLSA Overtime Collective Members were not exempt from receiving FLSA overtime benefits.

70. Defendants knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendants willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the FLSA Overtime Collective Members are entitled.

71. The exact total amount of compensation, including overtime compensation, that Defendants have failed to pay the Named Plaintiff and the FLSA Overtime Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendants.

72. As a direct and proximate result of Defendants' conduct, the Named Plaintiff and the FLSA Overtime Collective Members have suffered and continue to suffer damages. The Named Plaintiff seek unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available, on behalf of themselves and the FLSA Overtime Collective Members.

**FOURTH CAUSE OF ACTION:**
**UNPAID OVERTIME WAGE VIOLATIONS ON BEHALF**
**OF PLAINTIFF AND SSPS**

73. All of the preceding paragraphs are realleged as if fully rewritten herein.

74. This claim is brought under the Ohio Wage Act.

75. The Named Plaintiff and the Ohio Rule 23 Overtime Class Members have been employed by Defendants, and Defendants are employers covered by the overtime requirements under the Ohio Wage Act.

76. The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" (1.5) the employee's regular rate of pay for all hours worked over forty (40) in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." See O.R.C. § 4111.03(A); see also 29 U.S.C. § 207(a)(1).

77. The Named Plaintiff and the Ohio Rule 23 Overtime Class Members worked in excess of the maximum weekly hours permitted under O.R.C. § 4111.03 but were not paid the required overtime wages for all of such time spent working because, despite being paid a salary, they were non-exempt employees since they were not paid on a "salary basis" as that term is defined under the Ohio Wage Act.

78. The Named Plaintiff and the Ohio Rule 23 Overtime class Members were not exempt from the wage protections of Ohio Law.

79. Defendants' repeated and knowing failures to pay overtime wages to the Named Plaintiff and the Ohio Rule 23 Overtime Class Members were violations of R.C. §4111.03, and as such, Defendants willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the Ohio Rule 23 Overtime Class Members were entitled.

80. For Defendants' violations of R.C. §4111.03, by which the Named Plaintiff and the Ohio Rule 23 Overtime Class Members have suffered and continue to suffer damages, the Named Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest and attorneys'

fees, and all other remedies available, on behalf of herself and the Ohio Rule 23 Overtime Class Members.

### FIFTH CAUSE OF ACTION
### O.R.C. 4113.15 – RULE CLASS ACTION FOR OPPA VIOLATION

81. All of the preceding paragraphs are realleged as if fully rewritten herein.

82. The Named Plaintiff and the Ohio Rule 23 Class Members were employed by Defendants.

83. During all relevant times, Defendants were entities covered by the OPPA and the Named Plaintiff and the Ohio Rule 23 Class Members have been employed by Defendants within the meaning of the OPPA.

84. The OPPA requires Defendants to pay Named Plaintiff and the Ohio Rule 23 Class Members all wages, including unpaid overtime, on or before the first day of each month, for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by them during the last half of the preceding calendar month. See O.R.C. § 4113.15(A).

85. During relevant times, Named Plaintiff and the Ohio Rule 23 Class Members were not paid all wages, including overtime wages at one and one-half times their regular rate within thirty (30) days of performing the work. See O.R.C. § 4113.15(B).

86. The Named Plaintiff and the Ohio Rule 23 Class Members unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

87. In violating the OPPA, Defendants acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Ohio law.

**PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiff, on behalf of herself and all members of the FLSA Collective Action, pray for relief as follows:

A. Judgment that Defendants is liable to Named Plaintiff and the Collective Plaintiffs for the conduct described herein of Defendants;

B. Designation of this action as a collective action on behalf of the Ohio FLSA Collective members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collective Action, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to join forms pursuant to 29 U.S.C. § 216(b);

C. Certifying the proposed Ohio Rule 23 Overtime Class under the Ohio Acts;

D. An injunction prohibiting Defendants from engaging in future FLSA violations;

E. Lost overtime wages and improperly deducted monies to the fullest extent permitted under the law;

F. Liquidated damages, prejudgment interest, and monetary penalties to the fullest extent permitted under the law;

G. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law;

H. Damages as set forth in OPPA;

I. Double damages, prejudgment interest, and monetary penalties to the fullest extent permitted under the law; and

J. Such other and further relief as this Court deems just and proper

Respectfully submitted,

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196), Trial Attorney
Angela J. Gibson (0080928)
**GIBSON LAW, LLC**
9200 Montgomery, Rd., Suite 11A
Cincinnati, OH 45242
brad@gibsonemploymentlaw.com
angela@gibsonemploymentlaw.com
513-834-8254 [T]
513-834-8253 [F]

*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiff demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)